UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL L. JONES | ) | Case No. 4:09-CV-2133 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #57] |
| WESTERN RESERVE TRANSIT | ) | |
| AUTHORITY, | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendant Western Reserve Transit Authority ("WRTA"). Plaintiff Paul L. Jones has responded in opposition and supplemented his opposition. WRTA has replied. For the reasons stated herein, WRTA's motion is GRANTED.

**I.    FACTS**

The underlying facts relevant to the disposition of this matter are as follows. Jones was hired by WRTA on February 20, 1999. Jones' employment consisted of driving a passenger bus for WRTA. During Jones' employment with WRTA, he was disciplined for relatively minor work policy infractions and generally received positive performance reviews. However, in 2006 Jones was disciplined for using offensive language toward a white co-worker. As a result, a letter of reprimand was placed in his file. The letter recommended Jones seek anger management or other counseling. The letter of reprimand also clearly stated that any similar offensive behavior in the future would be cause for disciplinary action, up to and including termination.

Following Jones' 2006 reprimand, he filed a race discrimination claim with the Equal Employment Opportunity Commission ("EEOC") against WRTA. The EEOC found no basis for the claim of discrimination against WRTA. Jones continued to work for WRTA, but alleges that he felt that following the EEOC claim, management treated him differently and paid closer attention to his work and behavior than that of other employees.

Jones employment was governed by the collective bargaining agreement ("CBA") between WRTA and Jones' union. The CBA states that employees "will keep in strict compliance with all rules and regulations of the WRTA and cheerfully obey all orders of the same when not in conflict with the rules… in this agreement." WRTA also operates under a Zero Tolerance Workplace Violence Policy. The Workplace Violence Policy states that:

> Any Employee who abuses, harasses, makes direct threats, exhibits threatening behavior, or engages in violent acts on WRTA property or vehicles shall be removed from the premises… and remain off of WRTA premises pending the outcome of an investigation. The WRTA shall initiate remedial action, deemed necessary and appropriate to the offense.

On April 28, 2008, Jones was operating a WRTA bus on the Belmont Avenue route, one of the stops of which is a Giant Eagle grocery store.  When Jones arrived at the stop, he observed a pick-up truck parked in a manner that was obstructing his ability to reach the stop. Jones immediately began to yell at the individual to move the truck. An argument ensued which escalated to the point that Jones used profanity and threatened the driver of the pick-up truck with violence. He called the driver a "punk," "punk-ass," and "motherfucker."  Jones also made threats such as "I'll kick your ass, motherfucker" and "Wait until I get off my job, let me catch you somewhere, I'll beat [you] up." The entire incident was captured on the bus surveillance camera. Accordingly, there is no dispute about the specifics of that event.  Following the incident, Giant Eagle notified WRTA and banned Jones from the property.

After being informed of the incident, Jones' union met with him and informed him that WRTA planned to terminate his employment. However, in lieu of termination, WRTA was willing to make Jones' employment conditional upon his completion of an anger management assessment. Thereafter, Jones was suspended from work without pay until the anger management counselor stated that he was fit for duty. Jones eventually agreed to receive anger management counseling and knew that if he did not comply with the requirements imposed by WRTA his employment would be terminated.

Jones was referred to Moore Counseling & Mediation Services ("Moore"), the party responsible for administering WRTA's Employee Assistance Program ("EAP"). Moore then referred Jones to Total Care Psychological ("Total Care") to complete his anger management assessment and subsequent treatment. Jones was assigned to Edith Schroeder for his initial anger management assessment. Jones met with Schroeder on three separate occasions; Schroeder diagnosed Jones with "unspecified adjustment disorder" with anger and anxiety components. She explained that this was a common disorder, that most people with the condition are able to function very well, and that Jones was functional and able at all times to engage in all major life activities.

After the initial three meetings, Schroeder sent a letter to WRTA indicating that Jones was not a danger to himself or others and that he was able to return to work on May 27, 2008. The letter also stated that Jones agreed to continue stress and anger management counseling. Jones attended two more counseling sessions on June 3, 2008 and June 17, 2008.  He also scheduled an appointment for July 8, 2008, but did not attend that appointment. Schroeder then placed a phone call to Jones encouraging him to return her call and to schedule another appointment. Jones never returned the call. Until August 2008, WRTA continued to receive

reports from Moore that Jones was in compliance with the requirements of his referral. IAt that same time, Jones' union approached WRTA requesting that they speak with Giant Eagle in an effort to rescind Jones' banning from the property. Following the request, WRTA contacted Moore to check on Jones' progress with his anger management. It was then discovered that Jones had not complied with his agreement in that he had not seen or contacted Schroeder since June 17, 2008. Upon the discovery that Jones was not in compliance, WRTA suspended him pending a hearing.

A hearing was conducted on August 20, 2008. On August 25, 2008, because of Jones' failure to comply with the conditions required for him to maintain his employment with WRTA, his employment was terminated. Jones alleges that he was under the impression that after he completed the initial assessment, any future anger management sessions were voluntary. However, the record makes it clear that Jones should have known that in order for him to maintain his employment, he was required to complete the agreed upon anger management program.

Based on the above facts, Jones filed his complaint on September 15, 2009, alleging five causes of action under both state and federal law. Jones' complaint alleges that WRTA discriminated against him based on disability and race. Additionally, Jones' complaint alleges retaliation stemming from his 2006 claim of race discrimination against WRTA.  Specifically, the complaint asserts claims for (1) violation of the American Disabilities Act, 42 U.S.C. § 12112; (2) violation of the Ohio disability discrimination law, Ohio Rev. Code § 4112.02; (3) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-2; (4) violation of Ohio race discrimination law, Ohio Rev. Code § 4112.02; and (5) retaliation as prohibited by 42 U.S.C. § 1981.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c)(2). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The Supreme Court has stated that the moving party always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the moving party, WRTA bears the initial burden of demonstrating that summary judgment is proper. *Id.*

Once the moving party has carried its burden, the responsibility then shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact for trial. The Supreme Court has directed that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting former Fed.R. Civ.P. 56(e)). In evaluating the nonmovant's proffer, a court must of course draw from the evidence all justifiable inferences in favor of the nonmovant. *Anderson,* 477 U.S. at 255. Accordingly, summary judgment analysis examines whether a trial is necessary and is therefore appropriate when there are no genuine issues of material fact. *Id.* at 250.

5

### III.     LEGAL ANALYSIS

#### A. Disability Discrimination

With respect to Jones' disability discrimination claims, he broadly alleges any number of facts, but offers no actual evidence in support of any of his conclusions. Upon review of the record, summary judgment is appropriate on his claim of disability discrimination against WRTA.

The Americans with Disabilities Act ("ADA") and Ohio Revised Code, Chapter 4112 prohibit employers from discriminating against a qualified individual with a disability or handicap. Both the ADA and that Ohio disability discrimination statute employ the same analysis. *Kleiber v. Honda of America Mfg., Inc.,* 485 F.3d 862, 872 (6th Cir. 2007).

To succeed on a disability discrimination claim, Jones must show that: (1) he was "disabled" under the ADA; (2) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations; (3) he suffered an adverse employment action; (4) WRTA knew or had reason to know of his disability; and (5) a non-disabled person replaced him or the position was not filled. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008) (citing *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996)). Further, to qualify as "disabled" under the ADA, "an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such impairment, or (3) be regarded as having such impairment." *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir. 2002) (citing and quoting 42 U.S.C. § 12102(2)).

Following the outburst that occurred in the Giant Eagle parking lot on April 25, 2008, Jones' was referred to Total Care. He was assigned to Schroeder, a Licensed Professional Counselor, who diagnosed him as having "unspecified adjustment disorder" with anger and

6

anxiety components. Jones also alleges that he is diabetic and hearing impaired. As noted above, to succeed on his disability claim, Jones must demonstrate that he is disabled as defined by the ADA. Jones' has produced no evidence that any of his claimed medical issues satisfy that definition. The counselor who examined Jones found that his unspecified adjustment disorder did not limit any of his activities and that he was able to fully function on a daily basis. There are also no facts in the record which show that Jones' diabetic condition limited his ability to perform his job in the past, that his condition limited any of his major life functions, or that his condition had become more severe and was significantly more limiting at the time of his termination. As with the previous assertions, the record does not support the claim that Jones' hearing impairment was such that he would be considered disabled as defined by the ADA. As a prerequisite to driving for WRTA, Jones was required to obtain his Commercial Drivers License ("CDL"). To obtain a CDL, a person must meet minimum physical qualifications, including having adequate hearing. 49 C.F.R. §391.41. Jones met that requirement and has failed to demonstrate any deterioration in his hearing that would support a claim of disability. Consequently, Jones has failed to demonstrate he was disabled as defined by the ADA.

Absent proof of a disability, Jones' claim may still survive if he can show that WRTA regarded him as having a physical or mental impairment that substantially limits him in at least one major life activity. 42 U.S.C. § 12102(2). Jones asserts that because WRTA suspended him and forced him to go to anger management classes, WRTA "regarded him" as being unable to function in at least one major life activity – working. *See* 29 C.F.R §1630.2.

From the record, it is clear that WRTA did not regard Jones as suffering from an impairment that limited his ability to perform a major life activity. It is well established that an impairment that interferes with an individual's ability to do a particular job does not demonstrate

7

an impairment substantially limiting a person in the major life activity of working. *See Daley v. Koch,* 892 F.2d. 212, 215 (2d Cir. 1989) (citing *Forrisi v. Bowen*, 794 F.2d 931, 934-35 (4th Cir. 1986)). Jones has provided no evidence that WRTA regarded him as being incapable of performing the major life activity of working. In that regard, Jones admits that WRTA regarded him as only being incapable of working as a bus driver. Accordingly, Jones' has failed to meet his burden of showing that WRTA regarded him as having an impairment that limits him in the major life of working. His disability discrimination claims must fail.

### B. Title VII

Jones has raised a federal race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as well as a state race discrimination claims under Ohio Rev. Code § 4112.02(A). When analyzing Revised Code Chapter 4112, Ohio courts generally apply federal case law interpreting Title VII of the Civil Rights Act. *See, e.g., Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). To establish a prima facie case of race discrimination under Title VII, a plaintiff must show: (1) that he is a member of a protected group; (2) that he was subjected to an adverse employment decision; (3) that he was qualified for the position; and (4) that similarly situated non-protected employees were treated more favorably. *Vincent v. Brewer Co.,* 514 F.3d 489, 494 (6th Cir. 2007) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Under the *McDonnell-Douglas* burden-shifting framework, once a plaintiff has set forth a prima facie case, the defendant bears the burden of production to put forth a legitimate non-discriminatory reason for the adverse treatment. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 706 (6th Cir. 2006) (citations omitted). If the defendant meets this burden, the burden again shifts to the plaintiff who must show that the defendant's reason was pretextual. *Id*. "A plaintiff

can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's alleged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

     As the record stands, Jones has not established a prima facie case of race discrimination. In order to meet the burden Jones must identify a comparable WRTA employee who engaged in the same behavior while possessing a similar disciplinary record and who was treated more favorably.  Jones asserts that two white employees were involved in physical altercations while on duty for WRTA and that neither of the men was fired nor required to participate in WRTA's EAP program.  The information provided in Jones' affidavit is insufficient to create a genuine issue of fact. The circumstances surrounding the physical altercations of the two white males are more than unclear – they are unexplained in any manner. Jones has not provided the Court with any dates or the underlying facts associated with these alleged altercations. Additionally, Jones has made no assertion that the two white men involved in physical altercations were similarly situated to him.  Jones had a large number of work policy violations on his record. He had also received a letter of reprimand stemming from a verbal altercation with a co-worker. The letter of reprimand clearly stated that any similar offensive behavior in the future would be cause for disciplinary action, which may include termination of employment. Jones offered no evidence of the prior disciplinary backgrounds of his alleged comparables. For the reasons previously stated, Jones has failed to establish that similarly situated non-protected employees were treated more favorably. Therefore, Jones has failed to satisfy his burden of establishing a prima facie case of race discrimination.

Assuming *arguendo* that Jones established a prima facie case of race discrimination, his claim would still fail. WRTA demonstrated that its actions with respect to Jones were legitimate and non-discriminatory. The letter of reprimand placed in Jones' employment file stated that any similar behavior on Jones' part would result in disciplinary action, including possible termination. Following the outburst that occurred on April 28, 2008, considering Jones' previous conduct and the letter of reprimand, WRTA had a legitimate, non-discriminatory reason for terminating Jones' employment immediately. However, WRTA extended Jones a further opportunity to maintain his job by completing anger management courses. Jones failed to comply with the stipulations of his employment, which resulted in his termination. Jones has offered no evidence that this legitimate reason was pretext. Jones' arguments that he somehow understood that he was in compliance with his program do not undermine the fact that the record demonstrates that he had failed to comply in any meaningful manner.

Jones has failed to demonstrate a prima facie case of race discrimination under state or federal law. He failed to identify any similarly situated persons that received more favorable treatment. Furthermore, WRTA set forth legitimate, non-discriminatory reasons for its actions, and Jones failed to offer evidence of pretext. His discrimination claims fail.

### C. Retaliation

A plaintiff alleging retaliatory discharge must prove the following: (1) that he engaged in a protected activity; (2) that he was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Chandler v. Empire Chem., Inc.,* 99 Ohio App.3d 396, 402 (1994) (citing *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir. 1984)). The same *McDonnell-Douglas* burden shifting statute applied in the race discrimination analysis applies in retaliations cases. The plaintiff must first

make out a prima-facie case of discrimination, the burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff. *Gribcheck v. Runton,* 245 F.3d 547, 550 (6th Cir. 2001). If the defendant satisfies his burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. *Id.*

Jones asserts that his 2006 discrimination charge with the EEOC caused WRTA to terminate his employment in 2008. To establish a causal connection, Jones has the burden of proffering evidence that is sufficient to raise the inference that his protected activity was likely the reason for the adverse employment action. *E.E.O.C. v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th. Cir. 1990) (quoting *Zanders v. National R.R. Passenger Corp.,* 898 F.2d. 1127, 1135 (6th Cir. 1990)). There are no facts in the record that support the claim that Jones' employment was terminated in response to his 2006 EEOC claim. Jones remained employed for two years following the incident, and WRTA gave Jones the ability to keep his job even after his subsequent verbal outburst at the Giant Eagle.

Assuming *arguendo* that Jones' minimal evidence establishes a prima facie case of retaliation, WRTA offered a legitimate, non-discriminatory reason for his termination. During the two years following Jones' EEOC claim, two events occurred. Jones violated the terms of the collective bargaining agreement and the Zero Tolerance Work Place Policy by engaging in a threatening verbal altercation with a member of the public, and Jones did not comply with the stipulation of his continued employment by failing to complete anger management counseling. Jones does not dispute these facts. As a result, WRTA has met their burden of establishing a legitimate reason for Jones' termination, and Jones has offered no evidence that the reasons

given for his employment termination were pretextual. WRTA is therefore entitled to summary judgment on the claim of retaliation.

## IV. CONCLUSION

Based upon the reasons stated herein, WRTA's motion for summary judgment is GRANTED. Jones' complaint is DISMISSED.

IT IS SO ORDERED.


Date: July 21, 2010 */s/ John R. Adams*
JUDGE JOHN R. ADAMS
United States District Court